ANTHONY GOLDSMITH (SBN 125621)
LAW OFFICES OF ANTHONY GOLDSMITH, APC
6303 Owensmouth Ave., 10th Floor
Woodland Hills, California 91367
Tel: (818) 646-2071
Fax: (818) 237-9256
Email: agoldsmith@goldsmithlawoffices.com
       paralegal@goldsmithlawoffices.com

Attorneys for Plaintiff
V.P. by and through her *Guardian ad Litem* BRYAN PROCKO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE REONA PROCKO and V.P. by and through her Guardian ad Litem BRYAN PROCKO<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MURRIETA and DOES 1 - 50, Inclusive,<br><br>Defendants. | CASE NO.   5:22-cv-00005-JGB-SP<br><br><u>Civil Rights</u><br><br>**PLAINTIFF V.P.'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT; PROPOSED ORDER THERON; AND DECLARTIONS OF ANTHONY GOLDSMITH AND BRYAN PROCKO IN SUPPORT THEREOF**<br><br>Complaint Filed:  January 3, 2021<br>Trial Date: November 5, 2024 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................- 3 -

PROCEDURAL HISTORY ................................................................................................- 4 -

THE PROPOSED SETTLEMENT ....................................................................................- 5 -

NON-OPPOSITION.............................................................................................................- 7 -

THE SETTLEMENT IS FAIR AND REASONABLE.....................................................- 7 -

    1.    The amount of the fee in proportion to the services performed. ..................................- 10 -

    2.    The novelty and difficulty of the questions involved, and the skill required to perform legal services properly..........................................................................................................- 11 -

    3.    The amount involved and results obtained. ..................................................................- 11 -

    4.    The experience, reputation and ability of the attorneys performing legal services. ......- 12 -

    5.    The time and labor required..........................................................................................- 12 -

    6.    Informed Consent of the representative of the incompetent person. ............................- 13 -

    7.    Where the fee is contingent: .........................................................................................- 13 -

PLAINTIFF V.P'S SETTLEMENT MONIES WILL BE PLACED INTO AN EXISTING SAVINGS ACCOUNT MANAGED BY HER PARENTS AS CO-CONSERVATORS AND SUBJECT TO SUPERVISION OF THE COURT THAT OVERSEES HER CONSERVATORSHIP..........................................................................................................- 13 -

CONCLUSION .....................................................................................................................- 14 -

# TABLE OF AUTHORITIES

**Cases**

*Robidoux v. Rosengren*,
   638 F.3d 1177 (9th Cir. 2011) .................................................................................. - 7 -, - 9 -

*Whitbread v Gadis Bar and Grill et al.*
   Case No: EDCV 19-236 JGB (SHKx) ECF No. 49 ................................................- 9 -

## INTRODUCTION

Plaintiff V.P., by and through her duly appointed *Guardian ad Litem* Bryan Procko, seeks court approval of her settlement with Defendant, the City of Murrieta ("Murrieta" or "Defendant"). The approval of the settlement as to Plaintiff V.P. is a condition precedent to the settlement of relief reached by the parties as set forth in that certain proposed Consent Decree that has been executed by the parties and that is attached hereto as Exhibit "A" (the "Consent Decree"). This settlement, as per and subject to the terms of the Consent Decree will ensure that the pedestrian elements of the public right of ways ("PROW") within the City of Murrieta will be improved and made accessible pursuant to applicable federal and State accessibility laws and standards. The Consent decree also settles monetary issues between the parties including personal injuries alleged by both Plaintiff V.P. and Stephanie Procko, as well as attorneys' fees and costs incurred by Plaintiffs in the matter. The Consent Decree terms with respect to injunctive relief were highly negotiated by the parties, taking into account the current condition of Murrieta's PROW, budgetary realities and agreed upon changes to policies and practices of the Defendant as to matters ranging from ensuring curb ramp improvements following street and road work, to obligations with respect to ongoing survey obligations.

## PROCEDURAL HISTORY

Plaintiff V.P., by and through her *Guardian ad litem* Bryan Procko, as well as her co-plaintiff Stephanie Reona Procko filed an action against Murrieta for violations of Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, the California Disabled Persons Act (the "DPA") and pled other state and federal access laws, as well as claims under the California Government Code for failure to maintain public property in a safe condition and failure to discharge mandatory duties. Plaintiffs sought damages for personal injuries and city wide injunctive relief. In response to Plaintiffs' original Complaint, Defendant filed an answer on

- 4 -

March 3, 2022. ECF No. 24.  This Court issued a civil trial scheduling order on August 28, 2022, referring to this matter to private mediation. ECF Nos. 33, 34. The parties engaged in settlement discussions and discovery to facilitate meaningful mediation discussions with a private mediator. Due to the substantial scope of injunctive relief being negotiated and the necessary scope of Plaintiff V.P.'s written discovery, the parties filed four stipulations to continue deadlines between February 6, 2023, and December 8, 2023. ECF Nos. 37,39, 41, 45, 46. The point of these stipulations was to allow Defendants to produce documents that were necessary to for V.P.'s counsel to accurately assess the physical condition of the PROW within Murrieta and assess liability for both the area where the Plaintiffs alleged they were injured and the PROW elements throughout Murrieta. Pursuant to the most current order continuing deadlines, this matter is set for trial on November 5, 2024. ECF No. 47. The parties attended mediation with Howard Herman of JAMS on March 6, 2024, and reached a settlement in principle as to injunctive relief and damages. However, there was additional substantial negotiation between Murietta and counsel for V.P. regarding the particularities of the injunctive relief to be granted.

## THE PROPOSED SETTLEMENT

All parties have agreed to enter into and executed the Consent Decree pending the Court's approval. Declaration of Anthony Goldsmith ("Goldsmith Decl."), ¶ 3. Defendant agrees to complete the actions within the Consent Decree and otherwise meet the obligations set forth within the Consent Decree pursuant to its terms. Without repeating the substance of the Consent Decree, some of the points that Plaintiffs and the disability community will particularly benefit from are the follows:

1. The Consent Decree sets forth broad access improvement requirements (divided on a tri-partite basis) with respect to Murrieta's PROW. The prioritization of the work is based on occupancy and use of areas within

Murrieta, with first priority encompassing areas where there is a high percentage of use for commercial, retail, governmental, health care and high-density multi-family residential and similar occupancies. The above work is in addition to access improvements that would otherwise be required by law when PROW elements are newly constructed or altered.

2. The Consent Decree requires Murrieta to choose the most stringent of applicable State and federal accessibility standards (the "Standards") and details the precise standards that Murrieta will use; including addressing the issues that arise when road or street work constitute alterations that will trigger curb ramp compliance at connected pedestrian paths of travel.

3. The Consent Decree requires re-inspection of Murrieta's PROW every ten (10) years and requires that the results of these inspections to be placed on Murrieta's Website and transmitted to Plaintiff's counsel.

4. The Consent Decree sets forth a detailed dispute resolution process that allows Plaintiffs' counsel to make sure that the work in the Consent Decree is completed on time and in compliance with the standards set forth in the Consent Decree. The process will allow active participation by Plaintiff V.P.'s counsel in the event of any deviations from the requirements of the Consent Decree, ranging from technical matters to budgetary issues. This obligation to meet and confer extends beyond the "program access" issues addressed in the Consent Decree and also addresses alteration projects that create independent access obligations.

5. The Consent Decree provides that Murrieta will continue with its current program of shaving and crack filling in the PROW and details the scope of that program with respect to the types of barriers that it will address, including the scope (or severity) of deficiencies to be addressed by the subject program.

6. The Consent Decree provides for a policy to ensure that inaccessible utility vaults in the PROW are addressed promptly with the appropriate public utility and that future permits for utility vaults will contain specific language regarding the duty of public utilities to maintain vaults in an accessible condition.

Plaintiff V.P. settled the monetary portion of the case for $185,000 which includes $35,000 as damages for her injuries and $150,000 for costs and fees, which is discussed, *infra*.

## NON-OPPOSITION

Counsel for Plaintiff Stephanie Reona Procko and Defendant have reviewed this Motion, and both confirm their clients do not object to and will not oppose the Motion and the settlement terms set forth in the Consent Decree and that they desire that the Honorable Court approve the settlement of this matter as to Plaintiff V.P. and the terms of the Consent Decree itself as well as shorten time to hear this Motion, assuming any hearing is needed. Goldsmith Decl., ¶ 4

As noted above, the Consent Decree settles the entire matter addressed in the action between the Plaintiffs and the Defendant. There are monetary settlement terms as well as provisions addressing injunctive relief. Goldsmith Decl., ¶ 3

## THE SETTLEMENT IS FAIR AND REASONABLE

A federal court exercising jurisdiction over federal claims and supplemental jurisdiction over pendent state law claims has a duty to evaluate whether a proposed settlement is in the best interests of a plaintiff who is a minor or incompetent person. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Here Plaintiff V.P. is a dependent adult who is under a conservatorship. Her conservators are her father and *Guardian ad Litem* Bryan Procko and her mother and co-plaintiff Stephanie Reona Procko. District Courts fulfil their duties by examining the settlement proposed and determining whether the net settlement to

the minor (or incompetent person) is fair and reasonable in light of the facts of the case, the minor's specific claim, and recovery in similar cases. *Id.*

The operative Complaint alleges, in sum, that public right of way elements in the City of Murrieta were inaccessible and Plaintiffs both alleged they were physically injured on October 4, 2020 at a curb ramp located in Murrieta at the corner of Kalmia and Jefferson Avenue, and further alleged that these injuries were caused by curb ramp (and its adjacent elements) failing to meet federal and State accessibility laws and standards.

As set forth in the Consent Decree, Plaintiffs obtained substantial and much needed injunctive relief that will begin to be implemented as soon as this settlement and Consent Decree are approved by this Court, as well as compensation for both Plaintiffs' alleged injuries. Plaintiff V.P.'s *Guardian ad Litem*, her mother (and co-conservator and co-plaintiff) believe the settlement is fair and reasonable and in Plaintiff V.P.'s best interests as well as the interests of the disability community who utilize the PROW elements of City of Murrieta. Goldsmith Decl. ¶ 14, Declaration of Bryan Procko ("Procko Decl.") ¶¶ 5-8

### V.P.'S COUNSEL'S FEES ARE FAIR AND REASONABLE

V.P.'s monetary settlement, as set forth in the Consent Decree comprises $185,000 of which $35,000 is intended to compensate V.P. for injuries and $150,000 is allocated to fees and costs incurred by her Counsel.

V.P.'s attorneys' fees billed in this matter totaled $213,207.00 and costs in the case totaled $11,365. Of these sums, $191,887.00 in fees were billed by Derby, McGuinness & Goldsmith, LLP ("DMG") and $21,320.00 were billed by the Law Offices of Anthony Goldsmith, APC ("LOAG"). DMG expended $8,740.95 in costs and LOAG is responsible for an additional $2,625.00 that may be paid through counsel for Stephanie Procko. Goldsmith Decl. ¶ 11. The $150,000 sum payable to counsel includes the $11,365.00 in costs, meaning that V.P.'s counsel are receiving $138,635.00 in fees. The Fees billed by counsel, as noted herein,

were calculated at a rate of $800 per hour for Anthony Goldsmith. Goldsmith Decl. ¶ 7. This Court set Anthony Goldsmith's hourly rate at $700 an hour (in a frankly basic Title III ADA case) in May 2020 (*Whitbread v Gadis Bar and Grill et al*. Case No: EDCV 19-236 JGB (SHKx) ECF No. 49). The paralegal hours awarded in *Whitbread* were set by this Court at $190. As to Plaintiff V.P. only a small fraction of time billed on this matter was billed by counsel other than the undersigned, Anthony Goldsmith and almost all the paralegal time was billed by Ms. Shalishah Patrick, who was the paralegal whose rates were set at $190 an hour by this Court in *Whitbread*. Since 2020, Mr. Goldsmith's partners in DMG have had their hourly rate set at $850 and $950 per hour. Goldsmith Decl. ¶ 7.

Although the Ninth Circuit cautions District Courts to consider only the net amount going to Plaintiff, not the proportion going to counsel, the agreed-upon attorney's fees are reasonable, given the work required and the novelty and complexity of the legal issues involved. In evaluating the fairness of a settlement, the Ninth Circuit directs:

> Inconsistency can be avoided if district courts limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases. Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard.

*Robidoux v. Rosengren*, 638 F.3d 1177, 1181-1182 (9th Cir. 2011).

Because this case is a disability rights / personal injury "cross over" case, where Plaintiffs sought injunctive relief throughout the City of Murrieta, as well as compensation for their injuries, Plaintiff's counsel for V.P. had to engage in the process required to obtain relief far in excess of what would have been involved in personal injury matter involving a lone curb ramp. Accordingly, Plaintiff V.P.'s counsel sought their legal fees and costs outside of and in addition to Plaintiff

V.P.'s damages; though the work required to prove that Plaintiffs' injuries were caused by violation of disability access laws was inextricably intertwined the work required to achieve injunctive relief. Goldsmith Decl. ¶9. As described herein, the damages recovery, in conjunction with the Consent Decree, is reasonable in light of the facts and Plaintiff's claims.

Although *Robidoux* clearly counsels against an examination of Plaintiff's fee arrangement with her attorneys, in an abundance of caution, Plaintiff will address that issue. After he was appointed *Guardian ad Litem* for Plaintiff V.P. (ECF No. 16) Bryan Procko, executed a Retainer Agreement with DMG (and later LOAG) to represent Plaintiff V.P. in the present action. Procko Decl. ¶ 7. That agreement provided for compensation of a contingency fee of 40% of the total amount recovered plus all costs advanced or in the alternative an award of Plaintiff's counsel's hourly rates set at $700 or a higher amount as counsel's rates changed over time. As of March 6, 2024, the case transferred from DMG to LOAG.[1] As Anthony Goldsmith remained counsel for Plaintiff V.P. the Court has been notified of his change of address. ECF No. 48. However, both DMG and LOAG have voluntary reduced their fees to 65% of those billed after payment of costs. Goldsmith Decl. ¶ 12.

Though Plaintiff V.P. is a dependent adult subject to a conservatorship and not a minor it is important to note that in examining the reasonableness of an attorneys' fee on a minor's compromise, California courts are guided by the factors in Cal. Rule of Court 7.955(b) which include:

**1. The amount of the fee in proportion to the services performed.**

For the last twenty-seven months since the case was filed, Plaintiff V.P.'s counsel has worked extensively with Defendant to identify physical

---

[1] For proprietary reasons, Plaintiff's counsel has not attached a copy of those agreements but will show the agreements to the Court *in camera* if needed.

barriers to public rights-of-way within the City of Murrieta and develop a framework for remediation plan based on site surveys conducted in 2022. Counsel for V.P. has invested more than 260 attorney hours to date Goldsmith Decl. at ¶ 8.[2] The work produced a Consent Decree and damages for injunctive relief that addressed the entirety of Defendant's PROW elements and achieved that relief for V.P. and people similarly situated as well as addressing damages, costs and fees.

2. **The novelty and difficulty of the questions involved, and the skill required to perform legal services properly.**

The legal issues litigated involve complicated, highly technical issues of the application of the ADA and other disability rights laws to PROW elements and the law related to the application of various standards based on, among other issues, the date of construction or alterations of PROW elements. Plaintiff V.P.'s counsel is one of a few attorneys with specialized expertise in both PROW access compliance as well as litigating similar matters involving injuries incurred by people with disabilities in paths of travel. Goldsmith Decl. ¶¶ 6; 9-10; 22-23.

3. **The amount involved and results obtained.**

The damages obtained for V.P. represent damages for personal injuries. Plaintiff V.P. fortunately had relatively minor injuries that required limited medical intervention and a lien of less than $700.00. In addition, to obtain damages under California civil rights laws, Plaintiff had to be ready to prove federal and State disability rights access violations; and that proof was also necessary to obtain the injunctive relief set forth in the Consent Decree, these tasks required extensive legal work and expertise specializing

---

[2] The majority of Plaintiff V.P.'s counsel fees were invested to obtain complete injunctive relief as to the entirety of Defendant's PROW elements and prove the access violations that were necessary to prove claims for injunctive relief and also necessary to enhance the value to both plaintiffs' damages claims.

in PROW access compliance involving injuries to an individual with disabilities.

4. **The experience, reputation and ability of the attorneys performing legal services.**

In addition to his career as an attorney, Mr. Goldsmith previously worked as a consultant advising governmental entities on, among other matters, their PROW obligations under disability rights laws. Counsel was a founding partner in National Access Consultants and between 1997 and 2007 advised multiple public entities on PROW access compliance as well as acted as a consultant for public entities in important cases involving PROW access. As a founding Partner of DMG, Mr. Goldsmith litigated the majority of the firm's Title II cases involving physical access barriers including PROW injury cross-over cases as other cases. Goldsmith Decl. ¶¶ 22-23.

5. **The time and labor required.**

The result achieved required more than 260 hours of attorneys' time, with the lion's share related to obtaining injunctive relief issues in this case, including drafting the bulk of the claim and complaint, responses to the Court's OSC, pleadings, propounding and responding to written discovery, review and review and analysis of expert's and documents provided by the Defendant and of course the drafting and negotiation of injunctive relief terms. Negotiations and discovery in this matter were substantial.[3] Goldsmith Decl. ¶¶ 9-10

---

[3] The volume and type of documents and general complexity of litigating a PROW case that includes allegations as to all alterations within the scope of federal and State access laws and codes usually exceeds staffing capacities of cities within the normal period of time allocated to conduct discovery. When possible, parties worked in a cooperative fashion with respect to discovery and were able to reduce the scope of discovery and expert costs that normally would be required to settle a case of this type. Notwithstanding there were over 45,000 pages of survey and other documents produced by Defendant.

Plaintiffs and Defendant were able to reach a settlement in principle as to the basic elements of injunctive relief and financial relief including attorneys' fees through private mediation on March 6, 2024. Defendant City and Plaintiff V.P.'s counsel worked to reduce the settlement in principle to a Consent Decree.[4] Goldsmith Decl. ¶ 9

**6. Informed Consent of the representative of the incompetent person.**

Plaintiff's Guardian *ad Litem* has approved the fee arrangement and the settlement. Procko Decl. ¶¶ 5-8.

**7. Where the fee is contingent:**

a. The risk of loss borne by the attorney. Obviously, Plaintiff would have had money to pay fees or costs if the case were lost.

b. The amount of costs advanced by the attorney. Plaintiff's counsel (DMG and LOAG) advanced $11,365.00 in costs which counsel have agreed to absorb within the contingent fee. Goldsmith Decl. ¶¶ 11-12.

c. Delay in payment. Plaintiff's counsel was first contacted in this matter in late 2020, almost four years ago and was involved in litigating the case from pre-litigation investigation to settlement. Goldsmith Decl. ¶ 2.

**PLAINTIFF V.P'S SETTLEMENT MONIES WILL BE PLACED INTO AN EXISTING SAVINGS ACCOUNT MANAGED BY HER PARENTS AS CO-CONSERVATORS AND SUBJECT TO SUPERVISION OF THE COURT THAT OVERSEES HER CONSERVATORSHIP**

Plaintiff's *Guardian ad Litem* has consulted with independent legal counsel and has elected to have the settlement monies deposited in an already existing account at Wells Fargo Bank that he and her mother, who are her co-conservators, maintain for her benefit. The account is subject to the duties imposed on Mr.

---

[4] Due to the complexity of the barrier remediation, the scope of the surveys conducted and budgetary constraints, it took counsel several months to negotiate and finalize the language of the Consent Decree and obtain approval from the Defendant's City Council and legal team.

Procko by the operative conservatorship and include reporting duties that he and V.P.'s mother have as her conservators. Procko Decl. ¶9.

## CONCLUSION

Plaintiff V.P. has obtained a fair settlement with Defendant, and uncontested by her co-conservator; including substantial injunctive relief that will benefit V.P. and the disability community. Plaintiff's Guardian ad Litem accordingly respectfully requests this Court approve the settlement for Plaintiff V.P.'s benefit and further that the Court order all settlement monies due to Plaintiff V.P. to be held for her interest in her savings account for her benefit as directed by her *Guardian ad Litem* as her co-conservator and subject to reporting under V.P.'s conservatorship. If, at a later date Plaintiff V.P.'s conservators deem it advisable they will open a special needs trust or similar trust in her name with the assistance of trust counsel.

The Plaintiffs will file the Consent Decree and proposed order with this Court upon the Court's approval of the settlement terms contained therein.

Dated: September 4, 2024   LAW OFFICES OF ANTHONY GOLDSMITH, APC

By: */s/ Anthony Goldsmith*
Anthony E. Goldsmith
Attorneys for Plaintiff,
V.P. by and through her Guardian ad Litem BRYAN PROCKO