1   Anthony E. Goldsmith, Esq. (SBN 125621)
    LAW OFFICES OF ANTHONY GOLDSMITH, APC
2   6303 Owensmouth Avenue, 10th Floor
    Woodland Hills, CA 91367
3   Telephone: (818) 646-2071
    Email: agoldsmith@goldsmithlawoffices.com
4
5   Attorneys for Plaintiffs
    V.P. by and through her
6   *Guardian ad Litem* BRYAN PROCKO

7
8                     UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
9

10  STEPHANIE REONA PROCKO and V.P.      CASE NO. 5:22-cv-00005-JGB (SPx)
    by and through her
11  *Guardian ad Litem* BRYAN PROCKO     Civil Rights

12                                       **CONSENT DECREE AND [PROPOSED**
                        Plaintiffs,      **ORDER]**
13          v.

14  CITY OF MURRIETA and DOES 1-50,
    Inclusive,
15
16                      Defendants.

17
18
19
20          This Consent Decree (the "Decree") is entered into by and between Stephanie Procko, V.P.

21  (collectively, the "Plaintiffs") and the City of Murrieta (the "City" or "Defendant"), to resolve any

22  and all disputes between them, with respect to injunctive relief and damages in that certain action

23  entitled *Stephanie Renoa Procko and V.P. by and through her Guardian ad Litem Bryan Procko v.*

24  *City of Murrieta*. Together, Plaintiffs and Defendant are referred to herein as the "Parties" and/or

25  individually referred to herein as a "Party" to this Consent Decree.

                                  **RECITALS**
26  A.          Whereas Plaintiffs presented an Administrative Claim to the Defendant pursuant to

27  California Government Code § 910 (the "Claim").

28

_____
                  CONSENT DECREE AND [PROPOSED] ORDER

B.          Whereas, on January 3, 2022, Plaintiffs filed a Complaint in the United States

District Court for the Central District of California entitled *Stephanie Renoa Procko and V.P. by*

*and through her Guardian ad Litem Bryan Procko v. City of Murrieta (Case No. 5:22-cv-00005-*

*JGB (SPx)* (the "Lawsuit" or "Action");

C.          Whereas, Plaintiffs claim that Defendant has violated Title II of the Americans with

Disabilities Act of 1990 (42 U.S.C. § 12131 et seq.) "ADA," Section 504 of the Rehabilitation Act

of 1973 (29 U.S.C. § 794 et seq.), and related state statutes including Cal Civ. Code §§54, 54.1

and Cal. Govt. Code §§ 4450, 815.6 and 835 and Defendant denies the allegations and specifically

denies that it unlawfully discriminated against or otherwise wronged Plaintiffs in any way;

D.          Whereas, the Parties wish to resolve any and all disputed issues between them,

arising out of or related to the Claim and the Lawsuit, solely in a good faith attempt to settle a

disputed claim and to avoid the expenses of protracted litigation.

E.          Wherefore, the Parties to this Consent Decree hereby agree and stipulate to the

Court's entry of this Consent Decree ("Decree"), which provide as follows:

1.          Jurisdiction.  The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1331

and 1345, and 42 U.S.C. §12188(b). Venue is appropriate in this District pursuant to 28 U.S.C.

§1391.

2.          Effective Date. The "Effective Date" of this Decree will be the date that: (1) the

Decree is executed by all Parties; and (2) the Court has entered an order approving this Decree and

retaining jurisdiction over the terms hereof; and (3) the Court has approved of the terms of this

Decree as to Plaintiff V.P.

3.          Injunctive Relief. Defendant agrees to complete the actions specified hereinbelow

(the "Work") and otherwise meet the obligations set forth in this Decree pursuant to existing projects

CONSENT DECREE AND [PROPOSED] ORDER

and those planned in the future, in order to bring the public right of way pedestrian elements of the City into compliance with the ADA and State law to the extent required by the terms hereof.

4.    Funding. The Parties agree that the Defendant may, in its sole and absolute discretion use any and all revenue sources available to it to fund the Work as described in Paragraph 13 of this Decree. The Parties acknowledge that the Defendant currently does not have all of the funding in place to carry out all the Work specified in the Decree, but that it will use best efforts and do what is reasonably practicable to secure the funding from all reasonable sources, including any federal or State grants, so that the Work can be carried out in accordance with the agreed schedule described herein below In the event that Defendant believes that any obligations it has to complete the Work cannot be carried out pursuant to the terms hereof, it will notify Plaintiffs, via their counsel, and explain, with adequate detail: (i) the reasons why funding is unavailable or delayed and (ii) how the lack of funding will impact the progress of the Work. The notice shall be sent within ninety (90) days of the Defendant's determination regarding fundings and will trigger the dispute resolution process set forth in paragraph 12, below.

5.    Covered Elements and Geographic Scope. As used herein, the term "PROW Elements" shall refer to all public right of way pedestrian elements, including sidewalks, curb ramps, (and any other places where pedestrian paths cross roads or streets) and any related elements and features within the jurisdictional boundaries of the City of Murrieta (the "Geographic Scope").

6.    Work Completion Date. Subject to shorter deadlines as set forth in Paragraph 13, below, the outside limit for overall completion of the Work, except for any Work relating to Priority Three Areas, is 25 years (the "Work Completion Date") from the Effective Date of this Decree, unless otherwise modified by written agreement of the Parties. Any such agreement modifying the terms hereof shall be submitted to the Court for approval.

CONSENT DECREE AND [PROPOSED] ORDER

7.    Definition of Accessibility and Standards Applicable to the Work. Where a PROW

Element is required to be "Accessible" within the Geographic Scope, the PROW Element must

comply with the most stringent of federal or state access standards applicable to that PROW Element

(the "Standards").

7.1 Without limiting the generality of this Paragraph 7, it is expressly agreed that

in order to be considered Accessible and in compliance with the Standards, all PROW Elements

shall, except as otherwise provided  herein,  comply with the specifications, tolerances, and

exceptions of: (i) the 2010 ADA Standards for Accessible Design as comprised by §35.151 of  28

C.F.R. Part 35 and the 2004 Americans with Disabilities Act Accessibility Guidelines (the "2004

ADAAG") as the 2004 ADAAG is set forth in 36 C.F.R. Part 1191, appendices B and D, as the

same may be amended; (ii) the most current iteration of Title 24 Part 2 of the California Code of

Regulations (the "CBC")  that apply to any element or feature in question to the extent that said

provisions apply to municipal public rights of way;  and (iii) (if required by law), the standards for

public  right  of  way  features  adopted  by  the  California  Department  of  Transportation  and

regulations of the United States Department of Transportation applicable to the accessibility of

public rights of way, to the extent that said provisions apply to municipal public rights of way. To

clarify, nothing in this section obligates the City to comply with any regulations which are not

applicable to public rights of way as a matter of law. Without limiting the foregoing, the Parties

agree that,  in order to be considered Accessible and in compliance with the Standards, sidewalks

shall, at a minimum, comply with the regulations and standards applicable to accessible routes as

set forth in Chapter 4 of the 2004 ADAAG and applicable provisions of the CBC and curb ramps

(or other places where pedestrian paths cross streets or roads) shall, at a minimum, comply with

the regulations and standards set forth in Chapter 4, section 406 of the 2004 ADAAG and 11B 406

of the CBC. The Parties agree that the direct slope of sidewalks shall be considered Accessible and compliant with the Standards if they do not exceed the direct slope of the adjacent road or street.

7.2 The Work will be performed in compliance with the Standards, including any specifications, tolerances, and exceptions set forth therein. In any instance(s) where the federal and State standards conflict (and compliance with State standards is required by law), the Parties agree that the more stringent regulation (i.e. providing greater access) will apply. The Parties understand and agree that Defendant is not relieved by the terms of this Decree from any obligation to provide access in the PROW to the extent otherwise required by law, including as set forth in Paragraphs 8 and 9, below.

8. <u>New Construction and Structural Impracticability.</u>  In addition to performing the Work set forth in Paragraph 13, Defendant agrees that, after the Effective Date, that all new construction of PROW Elements in the Geographic Scope undertaken by Defendant, or anyone acting on their behalf, shall be Accessible and comply with the Standards. Notwithstanding the foregoing, if in the course of performing new construction, Defendant encounters conditions that render an item of the Work to be structurally impracticable, as that term is defined in the ADA (See, <u>28 C.F.R. § 35.151(a)(2)(i)</u>), then Defendant or its counsel will provide written notice to Plaintiffs' counsel identifying the item of the Work that is structurally impracticable, pursuant to the notification and dispute resolution mechanism set forth in Paragraph 12, below.

9. <u>Alterations and Technical Infeasibility.</u> In addition to performing the Work set forth in Paragraph 13, after the Effective Date, all alterations, modifications, repairs, additions and/or improvements ("alterations"), of any PROW Elements in the Geographic Area (including the Work as defined in Paragraph 13, below) that is undertaken by Defendant or anyone acting on their behalf, shall be Accessible and comply with the Standards to the extent required by law. Notwithstanding the foregoing,  if in the course of performing any future alterations, Defendant encounters conditions

that render an item of the Work to not be technically feasible as that term is defined in section 106.5 of the 2004 ADAAG, then Defendant or its counsel will provide written notice to Plaintiffs' counsel identifying which alterations modification(s) to the item(s) it contends  are not technically feasible and shall propose alternate modification(s) intended to provide equal or substantially the same access as the alteration(s)  determined to be not technically feasible, pursuant to the dispute resolution mechanism set forth in Paragraph 12 of this Decree. Without limiting the generality of the foregoing, the City agrees that any alterations of roads or streets undertaken by the City, or  on its behalf, shall result in the installation of Accessible curb Ramps that meet the Standards to the extent that the alteration to public roads and streets involves Alterations to the pedestrian right of way for persons crossing said roads or streets; provided, however, that the Parties agree that an "alteration" does not include "maintenance" as defined in the document entitled "*Department of Justice/Department of Transportation Joint Technical Assistance on the Title II of the Americans with Disabilities Act Requirements to Provide Curb Ramps when Streets, Roads, or Highways are Altered through Resurfacing*" and dated July 8, 2013. The Parties agree that, except as set forth in this Decree as part of the Work, the City is not required by the terms hereof to correct any existing non-compliant curb ramp features that were constructed or should have been improved after the effective date of Title II of the ADA and that the terms of this Decree are intended to stand in the place of any such past obligations with respect to those PROW Elements.

10.    Initial Survey. Defendant has already conducted a survey (the "Survey") of the PROW Elements within the Geographic Scope for compliance with the Standards. After consideration by Plaintiffs and Defendants, it is agreed that the Survey is and was adequate in terms of its scope and the survey protocols and techniques utilized to meet Defendant's obligations under both federal and State law, to address, review and inspect its PROW Elements and create the basis

for a transition plan that meets the requirements of both Title II of the ADA and Section 504 of the Rehabilitation Act.

11.  <u>Subsequent Inspections and Reports</u>. Defendant will inspect PROW Elements ("Additional Inspections") within the Geographic Scope at least every ten (10) years following the date of the original Survey and will post the results of the Additional Inspection(s) on its public website or provide Plaintiffs' respective counsel a written report regarding same by December 1st of each year in which an Additional Inspection is conducted until the Work is complete.

12.  <u>Notifications and Meet and Confer Regarding Unforeseen Difficulties in Completing the Work.</u> In the event that unforeseen difficulties prevent Defendant from meeting the deadlines, completing any of the agreed-upon Work in the manner required by this Decree, or for any other reason being unable to meet the terms and conditions of this Decree or in the event of a determination that meeting the Standards is not structurally practicable or technically feasible (pursuant to Paragraphs 8 and  9 above), Defendant or its counsel will notify Plaintiffs' counsel in writing of the delay or cause for non-compliance or other determination within sixty  (60) days of the discovery thereof with respect to technical difficulties and within ninety days as to any financial issues as set forth in paragraph 4, above. The Parties will thereafter meet and confer in good faith to attempt to resolve any unforeseen difficulties or delays within ninety (90) days of Defendant's written notice to Plaintiffs' counsel.  Plaintiffs' counsel will conduct this meet and confer with Defendant prior to seeking enforcement of this Decree by the Court. The Parties agree that in the event of a dispute regarding compliance with the terms of this Decree, that Plaintiffs reserve the right to seek compensation for reasonable attorneys' fees, litigation expenses and costs in the event that Plaintiffs are found to be the prevailing part, and Defendant reserves the right to seek compensation for reasonable attorneys' fees, litigation expenses and costs in the event a  dispute raised by either of

1   the Plaintiffs is determined to be frivolous, unreasonable or groundless  pursuant to the holding of

2   *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).

3          The Defendant shall not be considered in breach of this Decree to the extent its

4   performance is prevented by an event of Force Majeure that arises after the Effective Date,

5   including but not limited to an act of God (such as, but not limited to, fires, explosions,

6   earthquakes, drought, tidal waves and floods), pandemic, war, invasion, military or usurped power,

7   threat of terrorism, and nuclear contamination. Defendant shall also not be considered in breach of

8   this Decree to the extent its performance is prevented by financial and/or budgeting constraints, as

9   long as Defendant has complied with its obligations under paragraph 4, above.

10

11      13.    <u>The Work:</u>

12      As used herein the following terms shall have the definitions set forth below:

13      Priority One Areas:

14      Priority One Areas shall be those parts of the City of Murrieta, within the Geographic Scope

15      where at least 70% of the area is zoned for: (i) commercial uses open to the general public,

16      including healthcare facilities, hospitals, nursing or group homes; and/or retail use; and/ or

17      (ii) governmental activities (including schools, large parks and other buildings or facilities

18      operated by the City); and/ or (iii) high density multi-family residential occupancies. High

19      density residential uses shall mean multi-family housing facilities with ten (10) or more

20      dwelling units. In addition, all areas where there are four or more traffic lanes on roads or

21      streets shall be considered Priority One Areas. Priority One Areas are located on the map

22      attached hereto as Exhibit A.

23      Priority Two Areas

24      Priority Two Areas shall be those parts of the City of Murrieta that are not considered to

25      be Priority One Areas or Priority Three Areas and that are within the Geographic Scope,

26

27

28

- 8 -

where at less than 70% but more than 5% of the area is zoned for: (i) commercial uses open to the general public, including healthcare facilities, hospitals, nursing or group homes; and/or retail use; and/ or (ii) governmental activities (including schools, large parks and other buildings or facilities operated by the City); and/ or (iii) high density multi-family residential occupancies. High density residential uses shall mean multi-family housing facilities with ten (10) or more dwelling units. Priority Two Areas are located on the map attached hereto as Exhibit B.

Priority Three Areas

Priority Three Areas shall be those parts of the City of Murrieta that are not considered to be Priority One or Priority Two Areas and that are within the Geographic Scope where at less than 5% of the area is zoned for: (i) commercial uses open to the general public, including healthcare facilities, hospitals, nursing or group homes; and/or retail use; and/ or (ii) governmental activities (including schools, large parks and other buildings or facilities operated by the City); and/ or (iii) high density multi-family residential occupancies. High density residential uses shall mean multi-family housing facilities with ten (10) or more dwelling units. Priority Three Areas are located on the map attached as Exhibit C.

Priority Three Areas shall include parts of the geographic scope that are primarily zoned for industrial uses, single family homes or low density multi-family residential uses. Low density residential uses shall mean multi-family housing facilities with ten (10) or less dwelling units.

- <u>Maintenance Shaving and Filling of Curb Ramps and Sidewalks:</u> The Defendant agrees that it will continue with its existing program of maintenance shaving and crack-filling as follows:

o Sidewalk and Curb Ramp Shaving and Asphalt Work: Defendant agrees that it shall continue its existing program of Sidewalk and curb ramp shaving addressing abrupt changes in level on pedestrian surfaces of less than 1 ½." Defendant will address requests by residents to remediate abrupt changes in level on sidewalks as well as deficient conditions identified by field staff. Defendant shall address abrupt changes in level by either ramping vertical discrepancies with temporary asphalt or concrete mix, or bevel down the concrete lip with concrete grinders. Cracks shall be filled with suitable filing agent depending on the thickness of the void. This program is intended to address, among other deviations, non-Accessible lips at curb ramps and changes in level where a ramp or gutter meet asphalt roadways or streets.

o Crack Filling: Defendant agrees that it shall continue its existing program of crack filling in sidewalks, which will be completed on both sidewalk and curb ramps in the Priority One Areas on or before 10 years from the Effective date, and in Priority Two Areas on or before 25 years from the Effective Date. Crack filling thereafter will be completed on an as-needed basis. As used herein the term "crack filling" means that the City will address cracks in concrete or asphalt failures in public rights of way features that were identified in the Survey or otherwise identified by the City to the extent they are not complaint with the Standards.

o Curb Ramps: Defendant shall provide Accessible curb ramps that meet the Standards in Priority One Areas on or before 10 years from the Effective Date. Defendant shall provide Accessible curb ramps that meet the Standards in Priority Two Areas on or before 25 years from the Effective Date.

Remaining Curb Ramps in Priority Three Areas: Additional Accessible curb ramps in Priority Three Areas shall be provided in the reminder of the Geographic Scope

as streets and roads are altered in a manner that requires the placement of accessible curb ramps pursuant to paragraph 8, above or on request by a resident with disabilities to replace or improve curb ramps that they utilize.

Sidewalk Repairs: Defendant will complete sidewalk alterations, or other kinds of repair or barrier remediation as part of the City's sidewalk repair program to assure that all sidewalks in the Geographic Scope are Accessible. Sections of sidewalk requiring alterations or other kinds of repair or remediation and not otherwise made accessible by operation of this Decree or otherwise shall be identified using the Survey and follow up inspections conducted pursuant to Paragraph 11, above. Alterations or other repairs or remediation will address identified non-Accessible conditions in sidewalks including changes in level, offsets, running slopes, cross slopes, and widths. The City will correct all inaccessible conditions along sidewalks: (i) in Priority One Areas within 10 years from the Effective Date; (ii) in Priority Two Areas within 25 years of the Effective date; and (iii) in Priority Three Areas, upon the earlier of the date of: (1) the Defendant's ongoing sidewalk replacement and repair program *or* (2) notification by a resident with disabilities (or their representative) that existing sidewalks in Priority Three Areas are defective or present barriers to access. Upon notification by or on behalf of a resident with disabilities, Defendant shall contact the complaining party (or their representative), in writing, within thirty (30) days and indicate the timeline for promptly replacing or improving any defective section(s) of sidewalk(s) addressed by the resident, so that they are brought into an Accessible condition in accordance with applicable Standards. The Defendant shall provide information on its website instructing residents as to how to request repairs to or remediation of section(s) of sidewalk(s) that are not Accessible and shall also intake and memorialize complaints via telephone or in writing. Any such complaints shall be transmitted by Defendant to, among other parties, the Defendant's ADA Coordinator and the office of the Director of the Public Works. Defendant anticipates that all inaccessible conditions along

all sidewalks in Priority Three Areas will be completely during the course of the City's regular course of sidewalk replacement or when required otherwise by law , contingent on availability of funding based on its existing programs. The Defendant shall be deemed to be in substantial compliance with its obligations to create Accessible sidewalks under this Decree if it is remediating enough barriers so that all sidewalks in the Geographic Scope can be reasonably anticipated to demonstrate Accessible conditions in Priority One and Priority Two areas on or prior to the Work Completion Date. Progress and determination of substantial compliance with the above requirements shall be made with reference to the number of barriers eliminated and the number of accessible sidewalk sections created following the date of delivery of each of the follow up inspection surveys required by Paragraph 11.

- Traffic Signal Retrofit: Defendant will retrofit City-owned traffic signals (with the exception of such that push buttons are installed at the correct heights and activators are Accessible in Priority One Areas on or before 10 years from the Effective Date, and in Priority Two Areas on or before 25 years from the Effective Date and in Priority Three Areas,  as streets and roads are altered in a manner that requires the placement of accessible traffic signals pursuant to paragraph 8, above or on request by a resident with disabilities to replace or improve traffic signals that do not comply with the Standards.

- Utility Vault Painting and Notice to Utility Companies. Without admitting ownership of, or control over the utility vaults installed by third party utility companies in the public rights of way, or the feasibility of taking precautionary measures relating to those utility vaults, Defendant shall take all reasonable efforts to notify utility companies of the non-compliance of any utility vaults that do not meet the Standards and that are within the PROW Elements. Defendant shall demand repair and remediation of the subject vaults. In addition, in all future permits granted for utility vaults that are in PROW Elements, Defendant shall include

language that specifically states that the utility in question must maintain their vaults and

infrastructure so that they fully comply with the Standards. Notice to utility companies shall

be sent by Defendant within six (6) months of the Effective Date as to any utility vaults

identified in the Survey or within six (6) months of any subsequent findings in surveys

conducted per Paragraph 11, above.

Enforcement of Obligations. As a condition of issuing permit(s) for new construction,

Defendant shall require the property owner to correct non-compliant portions of the curb

ramp and/or sidewalk adjacent to the development, as permitted by Streets and Highway

Code § 5610. For purposes of this section, "new construction" shall mean any project that

involves the construction of a new primary structure on a property or substantial changes

to an existing primary structure's footprint. However, this requirement shall not apply to

applications for building permits for accessory dwelling units (ADUs) or minor

renovations, such as interior remodels, window replacements, or other small-scale projects

that do not significantly alter the primary structure's footprint.

14. Monetary Settlement. Defendant, in full and final settlement of

Plaintiffs' claims for monetary damages for personal physical injuries shall pay $150,000 to

Stephanie Procko as directed by her counsel from California Trial Team P.C. The check to

Stephanie Procko shall be made out to "California Trial Team P.C. Client Trust Account" and

mailed as directed by her counsel. As to Plaintiff V.P., Defendant shall pay $35, 000.00 for

damages for physical personal injuries to an account as directed by her *guardian ad litem* and

$ 150,000.00 for attorneys' fees and costs to the Law Offices of Anthony Goldsmith APC.

Defendant shall issue a 1099 to each payee only in the exact amount of the payment to said payee.

(i.e.,, $35,000 to Plaintiff V.P. or any party designated by her and $150,000 to the Law Offices of

Anthony Goldsmith, APC).

Nothing herein shall limit the allocation of the Settlement Sum between Plaintiffs and their counsel. Each party will otherwise bear their own attorneys' fees and costs, if any, in relation to the Lawsuit and settlement of the Lawsuit.

a) Defendant will cause payment of all Settlement Payments to be made within fourteen (14) days of the Effective Date, subject to the timely receipt of IRS W-9 forms from the respective payees.

b) Plaintiffs understand and acknowledge that they will be responsible for all taxes that they are legally responsible to pay as a result of receiving sums under this Decree. Plaintiffs agree that, should any taxing authority assess any taxes, penalties or interest against either of them as a result of the Settlement Sum, they shall be solely responsible for the taxes, penalties, or interest, if any, which may be owed to any governmental agency as a result of the Settlement Sum, and Plaintiffs agree that they will indemnify and hold harmless Defendant for any such taxes, penalties, or interest of any nature.

15.     Dismissal with Prejudice. Within ten  (10) Court days following the later of: (1) the actual receipt by Plaintiffs' counsel of all the settlement sums payable as per Paragraph 14, above; (2) the Court entering an order approving this Decree and retaining jurisdiction over the terms hereof or (3) the Court's approval of the settlement of the terms of this Decree as to Plaintiff V.P., Plaintiffs shall file a stipulated dismissal with prejudice with a mutual waiver of fees and costs of the entire Action, subject to this Decree. Defendant will cooperate in the timely filing of said dismissal.

16.     Release. For and in consideration of the covenants contained herein and in consideration of the settlement sums described in Paragraph 14  of this Decree paid by Defendant to Plaintiffs, Plaintiffs and each of them agree that, except as set forth herein, neither of them will make any claim in the future for equitable relief or remedial measures to be undertaken as a result of any alleged discrimination and/or other alleged wrongful conduct by Defendant that was or could

CONSENT DECREE AND [PROPOSED] ORDER

have been made in the Lawsuit  and hereby each release, acquit and forever discharge Defendant and its representatives, employees, managers, accountants, agents, servants, contractors, joint venturers, affiliates, officers, directors, City Council, Council members, attorneys and indemnitors, of and from any and all claims, potential claims, demands of whatever kind or nature, whether in law or equity, presently known or unknown, and or causes of action through the Effective Date of this Decree.  Notwithstanding the foregoing, neither the release set forth in this Paragraph 16, nor Paragraph 17 below, nor any other provision of this Decree, serves to release Defendant with respect to: (1) any violations of any of the terms of this Decree or (2) any claim, suit, cause of action or right of recovery with respect to any building, facility, property, program, activity or service of the Defendant other than the physical condition of its PROW Elements. Additionally, the Parties specifically agree that neither the Release set forth in this Paragraph, Paragraph 16,  or any other provision of this Decree  shall in any way release Defendant or in any way limit any future claim, suit, cause of action or right of recovery that Plaintiffs may have against Defendant or any other person or entity in the event that either of them suffers a physical personal injury because a PROW Element is not Accessible (including, without limitation any claims or causes of action Plaintiffs may have under Title II of the ADA, §§, 54 or 54.1 of the California Civil Code or any provision of the California Government Code) with the exception that in any lawsuit brought in connection with a personal injury, neither Plaintiff shall seek injunctive relief beyond the terms of this Decree.

17.      Waiver of Rights under Civil Code Section 1542. As to the matters released herein, Plaintiffs each expressly waive, to the full extent permitted by law, all rights pursuant to §1542 of the California Civil Code which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN

- 15 -

BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs each acknowledge that they are aware that they or their attorneys may discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Decree, but that it is the intention of each of them to settle and release fully, finally and forever, any and all disputes and differences, known and unknown, suspected and unsuspected, which now exist, may exist, have existed, or hereafter may exist in the future relating to the subject matter of this Decree.

18.    No Admission of Liability. The Parties agree that neither this Decree nor anything said in the negotiation hereof will constitute an admission of liability, an acknowledgement of wrongdoing of any kind, or an admission or concession by Defendant on any point of fact or law. Neither this Decree nor any of its terms will be used as an admission or introduced as evidence as to any issue of law or fact in any action or proceeding, other than an action or proceeding to enforce this Decree. This Decree reflects, among other things, the compromise and settlement of disputed claims.

19.    Knowing and Voluntary. In executing this Decree, it is understood and agreed that the Parties rely wholly on their own judgment, belief, and knowledge of the nature extent, and duration of the alleged damages, and that the Parties have not been influenced to any extent in executing this Decree by any representations or statements, regarding alleged damages or regarding any other matter, made by the Parties or by any person or persons representing the Parties.

20.    Invalidity of any Provision. If any provision of this Decree is held to be invalid, unenforceable or contrary to any public policy, law, statute and/or ordinance, the remainder of this Decree will remain in effect and be valid and fully enforceable.

21.     Controlling Law: This Decree is entered into in the State of California and will in all respects be interpreted, enforced and governed by the laws of the State of California and, where applicable, Federal law.

22.     Drafting of this Decree. Each of the Parties hereto represents that they were fully participatory in the drafting and terms of this Decree. Accordingly, any ambiguities in the terms of this Decree will not be construed against any of the Parties and any doctrine of law regarding interpretation of any such ambiguities in the terms and provisions of this Decree against the Party drafting this Decree will not be applicable.

23.     Integration. This Decree constitutes an integration of the entire understanding and agreement of the Parties and supersedes all prior negotiations and understandings concerning the subject matter of this Decree. Any representations, warranties, promises, or conditions, whether written or oral, not specifically and expressly incorporated in this Decree, will not be binding on the Parties, and the Parties each acknowledge that they have not relied, in entering into this Decree, on any representation, warranty, promise or condition, not specifically and expressly set forth in this Decree. This Decree may not be amended, supplemented or abrogated other than by a written instrument executed by all of the Parties hereto and if necessary approved by the Court.

24.     Terms are Contractual. The terms of this Decree are contractual and not mere recitals.

25.     Counterparts. This Decree may be executed in any number of counterparts and/or by facsimile, each of which will be deemed to be an original and all of which together will be deemed to be one and the same instrument.

26.     Enforcement and Retained Jurisdiction. This Decree will be in full force and effect until the Work contemplated in this Decree is completed consistent with the terms of this Decree.. The Parties agree that this Decree is enforceable only by and as between the Parties to this Agreement and not by third party beneficiaries. The Parties agree that they will work cooperatively

CONSENT DECREE AND [PROPOSED] ORDER

to resolve any issues and/or concerns that may arise regarding the Parties' respective obligations under this Decree pursuant to the terms set forth herein before seeking the Court's involvement. The Parties agree that they shall promptly execute and stipulate to the filing of all documents required for the Court in this matter to issue an order retaining jurisdiction to enforce this Decree and its terms.

27.     <u>Approvals.</u> The Parties understand and agree that the Decree is contingent upon, and will not be effective pending, the approvals of the City of Murrieta's City Council.

**END OF PAGE**

**SIGNATURES ON NEXT PAGE**

ACCEPTED AND AGREED:

PLAINTIFF STEPHANIE PROCKO

DATE: 8/13/2024 _____

By: Stephanie Procko

PLAINTIFF V.P. BY HER GUARDIAN AD LITEM BRYAN PROCKO

DATE: _____

_____
By: Bryan Procko on behalf of V.P. as her *Guardian ad Litem*

DEFENDANT CITY OF MURRIETA

DATE: July 29, 2024 _____

_____
By: Kim Summers
Its: City Manager

**[PROPOSED ORDER]**

Pursuant to the stipulation of the parties, and for good cause shown, IT IS SO ORDERED.

DATED: _____    _____

ACCEPTED AND AGREED:

PLAINTIFF STEPHANIE PROCKO

DATE: _____

_____
By: Stephanie Procko

PLAINTIFF V.P. BY HER GUARDIAN AD
LITEM BRYAN PROCKO

DATE: Aug. 6, 2024

_____
By: Bryan Procko on behalf of V.P. as her
*Guardian ad Litem*

DEFENDANT CITY OF MURRIETA

DATE:    July 29, 2024

_____
By: Kim Summers
Its: City Manager

**[PROPOSED ORDER]**

Pursuant to the stipulation of the parties, and for good cause shown, IT IS SO ORDERED.

DATED:   November 21, 2024

_____
Jesus G. Bernal, U.S. District Judge

- 19 -

CONSENT DECREE AND [PROPOSED] ORDER

Docusign Envelope ID: 8039A7C4-8CA1-4AAE-9285-A99AA9082C62

# Exhibit A



Docusign Envelope ID: 0039A7C4-64A1-4AAE-9385-302A39B2A063

Docusign Envelope ID: 8039A7C4-8CA1-4AAE-9385-A99AA9082C62

# Exhibit B



Priority Two Areas

Docusign Envelope ID: 0039A7C4-64A1-4AAE-9885-A02A9880065A

Docusign Envelope ID: 8039A7C4-8CA1-4AAE-9385-A09AA9082C62

# EXHIBIT C



Priority Three Areas

Legend

— Murrieta City Limits
▢ Priority 1 Areas
▢ Priority 2 Areas
▢ Priority 3 Areas (no fill)